UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROBERT E. BURGIN                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:12-CV-856-DW

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY                                                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff Robert E. Burgin has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain

judicial review of a final decision of the Commissioner of Social Security that denied his

application for disability insurance benefits (DIB). Burgin applied for DIB on August 18, 2010,

alleging that he was disabled as of October 28, 2009, due to degenerative disk disease of the

lumbar spine, mild obesity, depression, anxiety disorder and borderline intellectual functioning

(Tr. 20). The Commissioner denied Burgin's claims on initial consideration (Tr. 84, 85-98) and

on reconsideration (Tr. 99, 100-115). Burgin requested a hearing before an Administrative Law

Judge (ALJ) (Tr. 129-130).

ALJ Gregory O. Varo conducted a video hearing from Lexington, Kentucky, in

Frankfort, Kentucky, on September 16, 2011. Burgin attended with his attorney, Walter McGee

(Tr. 32). Burgin and vocational expert (VE) Joyce Forrest testified at the hearing (Tr. 36-62, 63-

68). Following the conclusion of the hearing, ALJ Varo entered a hearing decision on October

21, 2011, that found Burgin is not disabled for the purposes of the Social Security Act (Tr. 18-

27).

In his adverse decision, ALJ Varo made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act
        through December 31, 2012.

2.	The claimant has not engaged in substantial gainful activity since October 28, 2009, the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3.	The claimant has the following severe impairments: degenerative disk disease of the lumbar and spine; mild obesity; borderline intellectual functioning; depressive disorder; and anxiety disorder (20 C.F.R. 404.1520(c)).

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). The claimant can lift 10 lbs. frequently and 20 lbs. occasionally; stand and walk 6 hours in an 8-hour day, but not more than 2 hours at a time; sit 6 hours in an 8-hour day, but not more than 2 hours at a time. He needs to shift positions every 2 hours. He can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl. He must avoid concentrated exposure to vibrations; avoid all exposure to unprotected heights. He is limited to simple, repetitive tasks; requires an object-focused work environment, no fast-paced production quotas or goals, and no task requiring significant reading or math skills.

6.	The claimant is unable to perform any past relevant work. (20 C.F.R. 404.1565).

7.	The claimant was born on October 11, 1959, and was 47-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed category to closely approaching advanced age (20 C.F.R. 404.1563).

8.	The claimant has at least a limited education and is able to communicate in English (20 C.F.R. 404.1564).

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR84-21 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a)).

11.	The claimant has not been under a disability, as defined in the Social Security Act, from March 2, 2007, through the date of this decision (20 C.F.R. 404.1520(f)).

(Tr. 20-27). Burgin sought review of the hearing decision by the Appeals Council (Tr. 7-8). The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ Varo's decision (Tr. 1-4). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 C.F.R. §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 C.F.R. §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii)  The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix.  *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work.  20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989).  A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3)  The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience.  See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

*Findings of Fact 4, 5, 9, 10 and 11.*

Burgin in his fact and law summary challenges the factual and legal adequacy of findings 4, 5, 9, 10 and 11.  (DN 18, FL&S at pp. 4-13). Specifically, he claims that his severe  mental impairments meet or equal the severity of three of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  See 20 C.F.R. 404.1520(d), 404.1525 and 404.1526.  Citing to the October, 2010 consultative psychological examination of Michael Cecil, Psy.D., Burgin argues that his full-scale IQ score of 54 places him in the category of moderate mental retardation (Tr. 345-46).  The testing results obtained by Dr. Cecil, according to Burgin, reveal that his verbal comprehension, perceptual reasoning, working memory and processing speed are extremely low - - at or below the first percentile (Tr. 346).  As a result, Dr. Cecil concluded in his report that Burgin would have "significant difficulty managing [his] … daily affairs independently."  (Tr. 346).  Dr. Cecil also offered the opinion that Burgin's functional limitations will include "work skills, self-direction, communication and interpersonal functioning."  (Id.).

Although ALJ Varo did acknowledge Dr. Cecil's test results, Burgin contends that the ALJ ignored evidence that supports a finding that Burgin's mental impairments included limitations in adaptive functioning that began prior to age 22, limitations sufficient to satisfy the B Criteria of the listing for mental retardation, Listing 12.05 (Tr. 25).  Burgin insists that his academic records from Oldham County High School establish the onset of his mental impairment prior to age 22 as required.

Burgin points out that by the time he quit high school midway through the tenth grade, his grades consisted primarily of D's and a single B in his special education class (Tr. 316-18).  He asserts that he did not, contrary to ALJ Varo's finding, have "satisfactory grades overall in

the ninth grade …"(Tr. 21).  As further example of his cognitive mental limitations, Burgin

points to his hearing testimony.  Burgin testified during the hearing of September 16, 2011that he

is unable to pay his bills or to read and understand the Bible; he also has difficulty completing

job applications or reading the labels on his pain medication (Tr. 53, 58-63).  Consequently,

Burgin concludes that there can be no doubt that he had "deficits in adaptive functioning initially

manifested during [his] … developmental period" as required by Listing 12.05B.

Burgin also maintains with respect to finding 4 that ALJ Varo erred in another respect.

Burgin argues that the administrative record reveals him to be markedly restricted in two of the

paragraph B Criteria of Listings 12.04 and 12.06, the listings for affective disorders and anxiety-

related disorders, respectively.  20 C.F.R. 404, Subpart P. App. 1, §§12.04 and 12.06.  The two

areas that Burgin alleges the ALJ failed to find him markedly restricted include the areas of

social functioning and concentration, persistence and pace.  Burgin argues that the record

repeatedly shows him to be markedly impaired in his social functioning due to his limited

interaction with friends or neighbors, combined with his social isolation and moodiness (DN 18,

F&LS, p. 10).  Likewise, he claims that the record is "replete" with examples of his inability to

meaningfully concentrate, focus or persist and pace himself.  To confirm his markedly impaired

status, Burgin cites his alleged inability to take pain medication, to use Facebook, to read the

Bible, to complete job applications or to use a personal computer (Tr. 51-55, 56-62).  Burgin

concludes that the administrative record viewed as a whole confirms that his severe mental

impairments preclude all substantial gainful activity.

Finally, with respect to finding of fact no. 4, Burgin maintains that ALJ Varo erred in

failing to afford sufficient weight to the opinion of Jodie R. Brown[1], a licensed clinical social

worker (Tr. 318-321).  ALJ Varo at p. 8 of his hearing decision grants little weight to Ms.

---

[1]  ALJ Varo in his hearing decision incorrectly identifies Brown as "Jodie Barnett."

Brown's counseling notes, which he concludes contain an "extreme exaggeration of the claimant's condition." (Tr. 25) Burgin now contends that Brown made no exaggerations in her counseling notes; and in fact, her conclusions concerning his severe depression are fully corroborated by the treatment notes of Burgin's family physician, Dr. Karem, who noted Burgin's difficulty sleeping, depressed mood and flat affect (Tr. 328-29, 337). Burgin consequently maintains that ALJ Varo failed to afford proper deference to the opinions of Brown and Dr. Karem, the latter of which was entitled to complete deference if not contradicted (DN 18, F&LS, p. 11) (citing *Walker v. Sec'y*, 980 F.2d 1066, 1070 (6th Cir. 1992)).

Burgin next challenges the functional residual capacity (RFC) finding contained in ALJ Varo's finding of fact no. 5. In this finding, as noted, ALJ Varo found that Burgin retains the residual functional capacity to perform a limited range of light work with certain postural and nonexertional restrictions. These restrictions include changing positions every two hours and that his work be limited to simple, repetitive tasks in an object-focused work environment that does not involve production quotas, significant reading or math skills. (Tr. 23).

Burgin insists that he is physically incapable of performing light work as defined in 20 C.F.R. §404.1567(b). In particular, he maintains based on a physical capacity evaluation performed at BaptistWorx in 2002 (Tr. 352-60), that he is unable to walk or stand a "good deal" of the workday or to sit most of the time since he can only sit for 30 minutes and stand for 20 minutes at a time (Tr. 358).

Burgin generally challenges finding no. 9 that he has no transferrable work skills. He argues as to finding 10 simply that ALJ Varo should not have gotten this far in the sequential evaluation process because the medical record conclusively demonstrates that his severe mental and physical impairments render him unable to perform substantial gainful activity at any level.

That being so, he then concludes that the ultimate finding of fact, finding no. 11, that he is not under disability, is not supported by substantial evidence (DN 18, F&LS p. 13-14).

*Listing of Impairments 12.04, 12.05 and 12.06*

The first issue we address involves finding of fact no. 4 (Tr. 21-23) of ALJ Varo's hearing decision. ALJ Varo determined in this finding that Burgin had no impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments of 20 C.F.R., Part 404, Subpart P, App. 1 (Tr. 21). Burgin, as noted, argues that this finding is not supported by substantial evidence for the reasons explained above.

The Court cannot agree with this conclusion. Burgin did not satisfy his burden at step 3 of the sequential evaluation process to show that his impairments meet or equal the criteria of any of the three listed impairments. At step three, a claimant will be considered to be disabled if his impairment meets or equals one of the listings of impairments found in 20 C.F.R. Part 404, Subpart P, App. 1. *McClellan v. Astrue*, 804 F. Supp.2 d 678 (E.D. Tenn. 2011). The burden falls on the claimant to prove every element of the applicable listing. *King v. Sec'y of H&HS*, 742 F.2d 968, 974 (6th Cir. 1986). When the claimant presents evidence of an impairment that meets or equals all of the requirements for a particular listed impairment, along with the 12-month duration requirement, a finding of disability is required without regard to the claimant's age, education or work history. *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also, Sullivan v. Zebley*, 493 U.S. 521, 531-33 (1990) ("The Secretary [now Commissioner] explicitly has set the medical criteria defining the listing impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience,

from performing *any* gainful activity, not just 'substantial gainful activity.'") (citing 20 C.F.R. §416.925(a)(1989)); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986) ("If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits; if not, the process moves to the fourth step").

An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings demonstrated by the medical evidence are equivalent in severity and duration to that of a listed impairment. *See Land v. Sec'y of H&HS,* 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. §1526(b)). A decision of medical equivalency, however, must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques. *Id.* Finally, an ALJ is not required by Sixth Circuit case law to individually discuss each element of the record when considering the listings so long as the ALJ demonstrates that he has considered the totality of the record. *Rosic v. Comm'r of Soc. Security*, 2010 WL 3292964 at *3 (N.D. Ohio Aug. 19, 2010) (citing *Gooch v. Sec'y of H&HS*, 833 F.2d 589, 591 (6th Cir. 1987)).

Because the listings establish a presumption of disability without consideration of a claimant's age, education or work experience, and represent an automatic "screening in" based only on a claimant's medical findings, the claimant must meet the strict evidentiary standard described above. *Zebley*, 493 U.S at 532. Burgin has not satisfied this strict standard, as ALJ Varo correctly concludes in his hearing decision at pp. 4-6.

To satisfy the listing for mental retardation, Listing 12.05, a claimant must show not only significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during his or her developmental period before age 22, but must demonstrate the required level of severity in the requirements set forth in paragraphs A, B, C or D of Listing

12.05.  See 20 C.F.R., Part 404, Subpart p, App. 1, §12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria … your impairment meets the listing.").  In other words, it is not enough for Burgin merely to establish that his tested IQ revealed a full-scale IQ of 54, or moderate mental retardation, in Dr. Cecil's opinion (Tr. 345-46).

Here, Burgin failed to adequately establish deficits in adaptive functioning that arose prior to age 22.  As the Commissioner notes, "adaptive functioning" relates to "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group."  *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993) (citing DSM III, pp. 28-29 (1987)).  Contrary to Burgin's claims, an examination of his high school records prior to his withdrawal from Oldham County High School in October of 1975, reveals that he had no failing grades in the ninth grade, but rather made three C's and two D's in his ninth grade course work (Tr. 317).  Only two of his six ninth grade classes were special education classes (Id.).  Although Burgin did subsequently choose to withdraw from school in the tenth grade, he did not "flunk out" of high school.  Rather, his grades fell largely within the average range in the 9th grade.

Further, Burgin's work history reveals long, continuous employment in various jobs, such as utility installer and inspector.   V.E. Forrest characterized these jobs in her hearing testimony as being "semi-skilled." (Tr. 63-64, 233, 244).  Such employment history contradicts a finding of disability under listing 12.05.  Also, Burgin did not testify during the administrative hearing that he ceased employment due to his cognitive limitations, or that cognitive limitations made work impossible for him to perform; rather, among the various reasons he offered, was that his employer, Manning Company "didn't have nothing else for me to do.  They just eliminated my

job." (Tr. 39). ALJ Varo therefor correctly cited to Burgin's "good work history until 2007" and the absence of any mental issues in Burgin's prior DIB claim, as being contrary to a finding of disability at step 3 of the evaluation process (Tr. 21, 75-83).[2]

Burgin's hearing testimony further supports ALJ Varo's findings at step 3. Burgin testified to his ability to perform a number of significant daily activities. For example, he reported being able to complete light housework chores such as dusting, cleaning dishes and doing light cooking (Tr. 50-51). He is able to shop, drive, attend church regularly and on occasion visit with family and friends (Tr. 51-52, 54-56). He also watches sports and comedy programs on television (Tr. 56-57). Given these facts of record, ALJ Varo did not err in his finding that Burgin has no more than mild or moderate difficulties with his daily activities and his social functioning (Tr. 21-22). Both of the state agency consultants, Jay Athy, Ph.D., and Alex Guerrero, M.D., likewise concluded that Burgin's mental condition did not meet or equal the criteria of Listing 12.05 given Burgin's completion of the ninth grade, long-term work history and ability to complete various DIB application forms (Tr. 91, 105-07). These additional reports of the agency consultants, along with the absence of any evidence of trauma or decrease in mental functioning subsequent to the prior adverse disability determination of 2009, further supports the findings of ALJ Varo at finding of fact no. 4. (Tr. 21, 25).

---

[2]  On Oct. 27, 2009, ALJ Peter C. Edison entered an adverse hearing decision that denied Burgin's prior DIB claim. Burgin in that claim alleged disability as the result of lumbar degenerative disk disease, depression and GERDs (Tr.77). ALJ Edison found that Burgin had severe impairments of lumbar degenerative disk disease and depression, but determined that the impairments did not meet or medically equal any of the listed impairments of 20 C.F.R. Part 404, Subpart P, App. 1 (Tr. 78-79). Rather, ALJ Edison found in finding of fact no. 5 of his hearing decision that Burgin retained the residual functional capacity to perform light work with a sit/stand option (Tr. 80-81). Although ALJ Edison found that Burgin could not return to any of his past relevant work, he determined based on Burgin's age, education, work experience and RFC, that Burgin could perform alternative work in such jobs as bench work assembly, sorting and packaging and press operation (Tr. 82).
   The prior decision of ALJ Edison has not been reopened, and the Court has no jurisdiction to review the actions of the Commissioner on Burgin's earlier claim. *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977). Further, ALJ Varo correctly notes at p. 7 of his opinion in footnote 1 that absence evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of the previous ALJ and must adopt such findings made in a final decision on a prior claim unless there is new and material evidence relating to such a finding or a change in the law. *See Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-3(6) and 98-4(6). (Tr. 24).

The Court concludes in similar fashion that substantial evidence supports ALJ Varo's determination in finding no. 4 as to Listing 12.04, the listing for affective disorders, and Listing 12.06, the listing for anxiety-related disorders. 20 C.F.R. Part 404, Subpart P, App. 1, §§12.04, 12.06. Paragraph A of Listing 12.04 requires a medically persistent depressive syndrome, manic syndrome or bipolar syndrome characterized by a minimum number of specifically listed symptoms set forth in the paragraph A criteria of the listing. 20 C.F.R. Part 404, Subpart P, App. 1, §12.04A. Likewise, Listing 12.06 requires in the Paragraph A criteria either a generalized persistent anxiety, a persistent irrational fear, recurrent severe panic attacks, recurrent obsession or compulsions, or recurrent and intrusive recollections of a traumatic experience causing marked distress. 20 C.F.R. Part 404, Subpart P, App. 1, §12.06A. Not only must a claimant satisfy the paragraph A criteria of either or both listings to be disabled, he or she also must satisfy at a minimum the paragraph B criteria of each listing as well.[3]

Here, Burgin does not discuss the paragraph A criteria of either Listing 12.04 or Listing 12.06. This omission, as the Commissioner correctly points out, would itself enable the Court to conclude that he had failed to establish his disability at step 3 under Listings 12.04 and 12.06. Moreover, even were the Court to give Burgin the benefit of the doubt as to the paragraph A criteria of either listing, he still cannot show that ALJ Varo's hearing decision as to the Listings' paragraph B criteria is not supported by substantial evidence.

To meet the paragraph B criteria, Burgin must show a marked restriction in two categories that include activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, or alternatively, repeated episodes of decompensation of an

---

[3]  The Commissioner correctly points out that both Listing 12.04 and Listing 12.06 contain paragraph C criteria, which when satisfied in conjunction with the criteria of paragraph A may enable a claimant to successfully meet the listing criteria (DN 19, F&LS, p. 8, n. 7). Burgin does not argue in his fact and law summary that he presented proof sufficient to satisfy the paragraph C criteria of either Listing 12.04 or Listing 12.06.

extended duration. 20 C.F.R. Part 404, Subpart P, App. 1, §§12.4B and 12.6B. A marked restriction is one that is more than moderate, but less than extreme. See 20 C.F.R., Part 404, Subpart P, App. 1, §12.00C. Burgin argues in his fact and law summary that the record contains ample evidence of marked restrictions in both social functioning and in concentration, persistence or pace.

Once again, the Court is compelled to disagree based upon its review of the record. While it is true that on occasion Burgin is reported to be difficult to interact with, this situation apparently occurs only when he does not have access to his antidepressant medication, Abilify (Tr. 272). Otherwise, the record reveals that he is able to sufficiently interact with relatives, church friends, and his neighbors, so as to preclude a finding of a marked restriction in social functioning (Tr. 262, 271-293). For example, Burgin's wife reported that he frequently talks on the phone with friends and family (Tr. 267, 271). Burgin testified that he regularly visits his mother-in-law, attends church every Sunday, goes to the grocery store and visits with family members (Tr. 52, 62, 262, 271, 292-93). Substantial evidence therefor exists that Burgin has no more than moderate difficulties at worst with his social functioning (Tr. 22).

The same conclusion holds true for the paragraph B criteria of concentration, persistence or pace. Once again, Burgin's wife related that Burgin is able to follow spoken instructions and to finish the projects that he starts (Tr. 272). Burgin testified that he is able to watch both comedy and sports shows on television without any complaints of difficulty comprehending what he is watching (Tr. 56, 262, 271, 293). The record therefore appears to confirm ALJ Vero's conclusion that Burgin has no marked difficulties in this particular paragraph B criteria (Tr. 22). The Court notes in this respect that both Drs. Aphy and Guerrero also concluded that the evidence they reviewed did not satisfy the paragraph B criteria for either of these listings (Tr. 90-

91, 106).  To the contrary, these state agency consultants agreed that Burgin exhibited only mild restriction in his activities of daily living and moderate restrictions in both maintaining social functioning and concentration, persistence or pace.  Consequently, substantial evidence does support the determination of ALJ Varo at finding of fact no. 4.

*Residual Functional Capacity.*

The Court turns to finding of fact no. 5 of ALJ Varo's hearing decision (Tr. 23-25).  In this finding, ALJ Varo determined that Burgin has the RFC to perform light work with various restrictions that include:   shifting position every two hours; avoiding of exposure to vibration and unprotected heights; only occasional stooping, kneeling crouching and crawling; and performing simple, repetitive tasks in an object-focused work environment with no fast paced production quotas and no task that requires significant reading or math skills (Tr. 23).

In making finding no 5, ALJ Varo acknowledged in his decision that absent new and material evidence or a change in the law, he was bound by the prior findings made by ALJ Edison in his earlier hearing decision of Oct. 27, 2009 (Tr. 75-83).  ALJ Edison found similar to ALJ Varo that Burgin has the RFC to perform light work with a sit/stand option (Tr. 80).  ALJ Varo in his RFC finding added the additional restrictions set forth above.  *See Drummond v. Comm'r*, 126 F.3d 837, 842 (6th Cir. 1997); AR 98-4(6), 1998 WL 283902 at *3.  Among the new, nonexertional restrictions imposed by ALJ Varo - - those related to the need for limitation to simple, repetitive tasks in an object-based work environment with no production quotas and no significant reading or math skills - - were those found based on Burgin's borderline intellectual functioning (Tr. 23-24).[4]

---

[4]   As noted, Burgin in his prior DIB application before ALJ Edison made no claim for benefits based upon mental retardation under Listing 12.05.

ALJ Varo in finding no. 5 gives little weight to the counseling notes and statements of Jodie R. Brown, LCSW, which he characterized as being the result of "her extreme exaggeration of the claimant's condition." (Tr. 25, 318-21). Burgin now maintains that the counseling notes of Brown contain no exaggerations, but rather are amply supported by the treatment notes of his primary care physician, Dr. Karem (Tr. 328-29, 337). Burgin consequently maintains, as noted above, that ALJ Varo fails to accord proper deference to the opinions of Dr. Karem and LCSW Brown under the treating physician rule. *See Walker v. Sec'y*, 980 F.2d at 1070.

Under the treating physician rule, the Commissioner's regulations require that the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). *See Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) (discussing the treating physician rule). A physician will qualify as a treating source if the claimant sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition." *Smith v. Comm'r of Soc. Security*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502).

The treating physician rule rests on the assumption that a medical professional who has dealt with a claimant over a long period of time for a specific illness will have a deeper insight into the medical condition of the claimant than an individual who may have examined the claimant only once or has merely seen the medical records of the claimant. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citing *Bowman v. Heckler*, 70 F.2d 564, 568 (5th Cir. 1983)). The opinion of a treating source need not be given complete deference, however, if that opinion lacks objective support in the record, is in tension with a prior opinion of the same treating source,

lacks meaningful detail, is entirely conclusory, or is in conflict with other evidence of record showing substantial improvement in the claimant's condition.  *See  White v. Comm'r*, 572 F.3d 272, 285-87 (6th Cir. 2009); *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005); *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y*, 25 F.3d 284 (6th Cir. 1994).

Even in those circumstances in which the Commissioner does not give the opinion of a treating physician controlling weight, it may still be given great weight.  *White*, 572 F.3d at 286 (citing SSR 96-2p).  When an ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must balance a number of factors to evaluate what weight the opinion should be given.  *Wilson*, 378 F.3d at 544.  These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment provided, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source.  *Cole*, 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)).

As to the importance of these factors when determining the weight to be given the opinion of a treating source, *Cole* explains:

> [T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion 20 C.F.R. §404.1527(d)(2).  Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  S.S.R. 96-2p (1996).  This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended 'to let claimant's understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy that ... he is not."  *Wilson*, 378 F.3d at 544.

*Cole*, 661 F.3d at 937-38.

When an ALJ fails to conduct a balancing of the above factors to determine the weight that should be awarded to a treating source opinion, such as occurred in *Cole*, the Sixth Circuit has made clear that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole*, 661 F.3d at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545)).

The Court finds no violation of the treating physician rule in the present case. First, Jodie Brown, as a licensed clinical social worker, is not a medical doctor and therefore not an acceptable source insofar as the treating physician rule is concerned. See 20 C.F.R. §404.1513(d)(1); *Walters v. Comm'r*, 127 F.3d 525, 530-31 (6th Cir. 1997). This fact alone distinguishes the *Walker* decision cited by Burgin, which as the Commissioner correctly notes, involved the opinion of a treating psychiatrist who under the regulations is considered to be an acceptable medical source. 20 C.F.R. § 404.1513(a). Accordingly, ALJ Varo's hearing decision did not incorrectly apply the treating physician rule as to Brown.

No violation of the treating physician occurred either as to Dr. Karem, who is undeniably an acceptable medical source,. The Court has reviewed the treatment notes of Dr. Karem with a focus on the doctor's comments concerning Burgin's condition of depression (Tr. 327-337). Although the treatment notes do on occasion reflect the doctor's observation of a depressed mood and/or a flat affect, they repeatedly indicate that Burgin's depression symptoms are stable and adequately controlled by medication (Tr. 327, 328, 329, 330, 331, 332, 333, 334). Repeated

examination notes made by Dr. Karem also indicate that Burgin has normal cognition, normal insight, no mania, no hallucinations or delusions (Id.).

By June 24, 2010, Burgin reported to Dr. Karem that he felt he was "doing well" on his Cymbalta and Abilify medications (Tr. 332). LCSW Brown noted in her own counseling notes from that time period that Burgin's depression had improved with medication (Tr. 318-320). Brown's global assessment of Burgin's functioning significantly increased over the course of his counseling treatment to the GAF score in the 51-to-53 range, a score which suggests only moderate symptoms (Tr. 321). Accordingly, nothing in the treatment notes of Dr. Karem, nor the counseling notes of LCSW Brown, indicates to the Court that ALJ Varo's hearing decision is not supported by substantial evidence at finding of fact no. 5, or that the ALJ incorrectly applied the law in determining Burgin's RFC. Agency consultants, Drs. Athy and Guerrero, both concluded that Burgin retains the mental RFC to understand and remember simple instructions and to sustain attention for simple tasks for periods of up to two-hour segments in an eight-hour day (Tr. 96, 112). Substantial evidence accordingly supports the nonexertional limitations imposed by ALJ Varo in his RFC finding in finding of fact no. 5.

Burgin argues that the physical RFC portion of finding of fact no. 5 also is inconsistent with the 2002 BaptistWorx functional capacity evaluation (FCE) he received (Tr. 352-360). According to Burgin, this FCE "demonstrates conclusively that [he] … is unable to perform the functions demanded of light work." (DN 18, F&LS p. 12). The Commissioner, however, correctly points out that the FCE prepared by BaptistWorx not only predates the prior adverse determination of ALJ Edison in 2009, but also occurred more than four years before Burgin stopped work at Manning in March of 2007, after being told there was no work available for him with the company (Tr. 39).

Burgin does not cite to any specific portion of the BaptistWorx FCE that conflicts with the exertional RFC limitations imposed by ALJ Varo at pp. 6-8 of his hearing decision (Tr. 23-25). The medical treatment notes of Burgin's primary physician, Dr. Karem, contain no findings that would appear to preclude a limited range of light work (Tr. 327-337). Dr. Karem's examination notes repeatedly show negative straight leg raising, normal reflexes, normal neurological examination and full strength and intact sensation (Tr. 332-333, 340, 351). The reviewing state agency physician, Dr. Saranga, likewise concluded that Burgin can perform light work with certain postural restrictions (Tr. 108-09). Accordingly, the Court again finds that substantial evidence supports the RFC finding made by ALJ Varo in finding of fact no. 5 of his hearing decision.

*Findings of Fact 9-11*

The Court likewise rejects Burgin's challenges to findings of fact no. 9, 10 and 11. Burgin's argument regarding the transferability of job skills misses the mark given that ALJ Varo did not find that Burgin has transferrable skills based on his prior employment, but rather that the transferability of job skills was not material because, using the grids, the Medical-Vocational Rules, as a framework of reference, supported a finding of "not disabled." Specifically, the grids for light work indicate that a younger individual or one closely approaching advanced age, such as Burgin, who has a limited education, is able to communicate in English, and whose previous work was unskilled or semi-skilled, but not transferrable, is "not disabled." See 20 C.F.R., Part 404, Subpart P, App. 2, §§ 202.10, 202.11, 202.17, 202.18. Because ALJ Varo's hypothetical question to the V.E. limited Burgin to simple, repetitive, unskilled work, the issue of transferability of job skills was not relevant as it applies only in

those instances where a claimant is able to perform semi-skilled and skilled work. See 20 C.F.R. §404.1568(d). The Court therefore rejects Burgin's challenge to finding of fact no. 9 concerning the transferability of job skills (Tr. 26).

As for findings of fact nos. 10 and 11, that significant jobs exist in the national economy that Burgin remains capable of performing and that Burgin is not disabled, the testimony of vocational expert Forrest during the hearing constitutes substantial evidence to support both of these findings. ALJ Varo during the hearing presented a hypothetical question to V.E. Forrest that included all of Burgin's vocational abilities and limitations that the ALJ determined to be credible (Tr. 63-68). Based on the hypothetical, V.E. Forrest identified a substantial number of jobs that Burgin remains able to perform in the national economy including hand packer, inspector and machine operator (Tr. 65-67). The Commissioner therefore met her burden at step 5 of the sequential evaluation process based upon the testimony of V.E. Forrest. *See Ealy v. Comm'r*, 594 F.3d 504, 512-13 (6th Cir. 2010)( "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays the claimant's individual physical and mental impairments.' ") (citing *Varley v. Sec'y of HHS,* 820 F.3d 777, 779 (6th Cir. 1987)).

For these reasons, the Court concludes that the decision of the Commissioner denying Burgin's claim for disability insurance benefits should be and is affirmed.

Copies to Counsel of Record